[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 27 2000
THOMAS K. KAHN
CLERK

_____

No. 97-9212
Non-Argument Calendar

_____

D.C. Docket No. 95-00029-7-CR-1-HL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SYLVESTER JAMES, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Middle District of Georgia

_____

**(April 27, 2000)**

Before BIRCH, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Sylvester James appeals his conviction for one count of interstate transportation in aid of racketeering, 18 U.S.C. § 1952. James' counsel moved to withdraw as appellate counsel, and filed a brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), arguing that there were no issues of arguable merit. This Court denied appellate counsel's motion to withdraw, holding that an issue of arguable merit existed relating to whether the defendant understood the nature of the charge to which he pleaded guilty, as required by Fed.R.Crim.P. 11. On appeal, James' appellate counsel contends that the district court properly ensured that appellant understood the nature of the charge to which he pleaded guilty.

This Court reviews the issue of a Fed.R.Crim.P. Rule 11 violation for plain error when it was not raised before the district court. United States v. Quinones, 97 F.3d 473, 475 (11th Cir. 1996).

Having reviewed the transcript of the plea hearing, the relevant portions of the record, and the briefs of the parties, we find plain error and reverse and remand for further proceedings consistent with this opinion.

Appellant pleaded guilty to one count of interstate transportation in aid of racketeering ("Travel Act"), 18 U.S.C. § 1952. The plea agreement provided the following factual basis:

> [t]hat on or about September 6, 1995, the Defendant was a
> passenger in a car stopped for speeding. A deputy with the

2

> Lowndes County Police Department approached the vehicle in an attempt to initiate a traffic stop. As he did so the Defendant fled on foot carrying a package containing what he knew or should have known was cocaine. Later the cocaine was tested and weighed approximately one thousand (1,000) grams.

The plea agreement stated that "[t]he defendant is guilty and will knowingly and voluntarily enter a plea of guilty to a one count Superseding Information which charges defendant with Interstate Transportation in Aid of Racketeering." The agreement did not contain any information about the elements of the offense.

During the plea colloquy, the district court asked James if he understood the following charge: "on or about September 16, 1995 . . . you did, aided and abetted by others both known and unknown, commit the offense of interstate transportation in aid of racketeering in violation of Title 18 United States Code, Section 1952." James stated that he understood the charge. In response to further questioning by the court, James replied that he had consulted with counsel regarding his case, was not under the influence of alcohol or drugs, had no questions about the proceedings, finished the tenth grade in high school, and could read and write. The court also verified that James had read the plea agreement, reviewed it with his counsel, and had no questions about the agreement. The court then reviewed the factual basis of the plea with James in the following colloquy:

> The Court: Tell me briefly in your own words what it is you did.

James: . . . I did flee from a '89 Cadillac.

The Court: Fled from a Cadillac?

James: Yes, sir, on Interstate 75.

The Court: The last time I checked, it wasn't illegal to flee from a Cadillac. What did you do?

James: It was like I jumped out and ran.

The Court: Why? Ran from who?

James: An officer.

The Court: What is the government's contention?

Mr. Moultrie [AUSA]: That he jumped out of a car and he ran, carrying a package-

James: A black package

Mr. Moultrie: A package proved to contain approximately 1,000 grams of cocaine.

The Court: Is that true? Did you have the package?

James: Yes, sir.

The Court: Did you know it was cocaine?

James: No, sir, I didn't-to be really honest with you all of you sitting here, I didn't know it was cocaine.

The Court: Did you think it might be cocaine?

James: Yes, sir, I knew it was cocaine but I didn't know it was in there at that point in time.

The Court: Well, is it fair to say that in the overall picture of the scheme or activity in which you were involved at that time, that you knew or had good reason to suspect that drugs were involved?

James: Yes, sir.

The Court: And when you fled, is it reasonable to say that you knew you probably had a package of drugs even though you didn't know exactly what it was? Is that fair?

James: Yes, sir, you know, I'll be honest with you, in my own mind, didn't nobody really know I was in the pickup.

The court found there was a factual basis for the plea, that James was guilty, and that the plea was freely and voluntarily entered into.

Both James' counsel and the government argue that the court ensured that James understood the nature of the charge to which he was pleading guilty because the court: 1) determined that James had discussed his case with counsel; 2) ensured that James had reviewed the plea agreement with counsel; 3) afforded James an opportunity to ask questions at the plea hearing; and 4) required James to state the factual basis for his guilty plea.

Before accepting a guilty plea a district court must comply with Fed. R. Crim. P. 11, and, in particular, address three "core concerns" by ensuring that 1) the guilty plea is free from coercion; 2) the defendant understands the nature of the charge; and 3) the defendant understands the consequences of his plea. See Fed. R. Crim. P. 11, United States v. Jones, 143 F.3d 1417, 1418-19 (11th Cir. 1998). The nature of a Rule

inquiry necessarily varies from case to case, and "there is no one mechanical or precise juncture to which a district judge must conform in advising a defendant of the nature of the charges to which he is pleading guilty." United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999)(internal quotations omitted). We review on a case-by-case basis whether the district court adequately ensured that a defendant understood the nature of the charge. See United States v. DePace, 120 F.3d 233, 237 (11th Cir. 1997), cert. denied, 520 U.S. 1153 (1998). We have held that

> [f]or simple charges . . . a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice. Charges of a more complex nature, incorporating esoteric terms or concepts unfamiliar to the lay mind, may require more explication. In the cases of extreme complexity, an explanation of the elements of the offense like that given the jury in its instructions may be required.

Id. (quoting United States v. Dayton, 604 F.2d 931, 938 (5th Cir. 1979)). For example, in United States v. Quinones, 97 F.3d 473 (11th Cir. 1996), the district court did not mention the elements of the offense of using and carrying a firearm during and in relation to a drug-trafficking offense at any time during the plea colloquy. Id. at 474. The defendant also stated "I plead guilty I guess." Id. We held that the district court failed to comply with Rule 11(c)(1) because it did not inform the defendant of the nature of the charge, and the record did not indicate that he knew or understood

6

the elements comprising the charge. In DePace, we noted that, while the charge of using and carrying a handgun during and in relation to a drug trafficking charge is a simple charge, imposing liability on an aiding and abetting theory might not be understood by a lay person without explanation. Id. at 237. We held that, despite the added complexity in the nature of the charge, the record supported the conclusion that the defendant understood the nature of the charge because: 1) the defendant had completed high school and some college; 2) the court read the indictment and listed the essential elements; 3) the court confirmed that the defendant had reviewed the plea agreement and indictment with counsel; 4) the defendant admitted that he had assisted in the attempted theft of marijuana; and 5) the defendant stated that he did not have any questions and did not express any confusion throughout the proceeding. Id. at 238.

We have held that a Travel Act charge is a complex charge. See id. at 237 n. 5 (referring to the Travel Act charge in United States v. Byrd, 804 F.2d 1204 (11th Cir. 1986), as an example of a complex charge). For a conviction under the Travel Act, the factfinder must find that "the defendant traveled in interstate commerce with the intent to promote unlawful activity and thereafter actually did promote or attempt to promote the unlawful activity." United States v. Kramer, 73 F.3d 1067, 1071 (11th Cir 1996). The Act requires proof of a continuous course of conduct to establish that

a "business enterprise" was involved. United States v. Pollock, 926 F.2d 1044, 1050 (11th Cir. 1991). Specifically, the elements of a Travel Act charge are: 1) that the defendant traveled in interstate commerce on or about the time, and between the places, charged in the indictment; 2) that the defendant engaged in that travel with the specific intent to promote, manage, establish or carry on an unlawful activity, as defined; and 3) that the defendant thereafter knowingly and willfully committed an act to promote, manage, establish or carry on such unlawful activity. See United States v. Corona, 885 F.2d 766, 770-71 (11th Cir. 1989). The phrase "unlawful activity" includes "any business enterprise involving . . . narcotics or controlled substances." 18 U.S.C. § 1952(b)(1).

In Byrd, the defendant argued that the district court failed to determine if he understood the Travel Act charge to which he pleaded guilty. See Byrd, 804 F.2d at 1206. The Court found that the Rule 11 requirements were satisfied, in part, because the district court followed the procedure for extremely complex cases recommended in Dayton, by patterning its explanation of the offense after the standard jury instructions.

In this case, however, the district court did not inform James of the elements of a Travel Act charge at any time during the hearing. Further, while James stated that he had reviewed his plea agreement with his attorney, the plea agreement cited only

8

generally to the Travel Act statute, and did not specify <u>any</u> of the elements involved in the charge or any facts that would support the charge. At no time did the court during the plea colloquy or the plea agreement refer to interstate commerce or continuous activity or any business enterprise. Nor do James' admissions at the plea colloquy in any way reference interstate commerce or continuous activity or any business enterprise. Moreover, the plea colloquy does not in any way establish that James engaged in interstate travel with the specific intent to promote, manage, or carry on an unlawful activity (here a narcotics transaction).

The only evidence that James understood the nature of the Travel Act charge is his statement that he understood the charge at the hearing, his admission that he reviewed his case and plea agreement with his counsel, and his failure to ask any questions. Given the fact that James only had a tenth grade education, the complexity of the Travel Act charge, and the complete absence of any reference to the elements of the charge during the plea hearing or in the plea agreement or any facts in support of the charge, the record does not indicate that James knew or understood the elements comprising the charge. We therefore reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**