[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10422
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cr-00167-AKK-SGC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM OTIS JAMES BROWN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 8, 2018)

Before WILSON, JORDAN, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant William Brown pled guilty to bank robbery and was sentenced to 151 months' imprisonment. Defendant now appeals, arguing for the first time that the district court plainly erred by concluding that his guilty plea was knowing and voluntary. After careful review, we affirm.

## I.    BACKGROUND

In May 2016, a federal grand jury charged Defendant with bank robbery, in violation of 18 U.S.C. § 2113(a). Defendant initially pled not guilty, but then later entered a guilty plea.

At the change of plea hearing, Defendant informed the district court that he wished to plead guilty. The district court confirmed that Defendant received a copy of the indictment and verified that Defendant understood he was being charged with "bank robbery by force, violence, and intimidation as it relates to Woodforest National Bank." The district court also confirmed that Defendant understood the rights that he was giving up by pleading guilty and that he faced a statutory maximum sentence of 20 years' imprisonment.

In explaining the nature of the charges against Defendant, the court stated:

> Before you can be found guilty of this crime, the [G]overnment will have to show that you knowingly took or attempted to take money or property that's possessed in this case by a federally insured bank and that you did so by means of force and violence or by means of intimidation.

2

Defendant stated that he understood.  Defendant also confirmed that he was pleading guilty because he was in fact guilty and that he wished to go forward without the benefit of a plea agreement.

The Government then outlined the facts that it would prove if the case went to trial.  The Government stated in relevant part that:

> On April 11th, 2006, at approximately 7:45 p.m., [Defendant], wearing a gray shirt, entered the Woodforest Bank situated inside the Walmart at 1600 Montclair Road in Birmingham.
>
> [Defendant] went to the counter and whispered to Marshae Sanders, the victim teller, to give him the money in the top and bottom drawers.
>
> The teller was so shocked by the request that she did not immediately comply, causing the defendant to repeat his demand.
>
> The teller subsequently reached inside her top drawer, grabbed some money, and hit her silent alarm button.
>
> She then proceeded to her second drawer.  While removing money there, which included a GPS tracking device, the teller attempted to hit the alarm button again.  This time, however, [Defendant] saw what she was doing and said, "Don't do that."  The teller immediately stopped when she saw [Defendant] reach inside of the jacket, believing he might have a gun.
>
> With approximately $1,268 in hand, [Defendant] turned and swiftly walked away.

Defendant confirmed that the facts outlined by the Government were "substantially correct."  However, he denied that he reached into his jacket.  The district court asked whether, excluding that fact, Defendant engaged in all the other

3

conduct outlined by the Government.  Defendant stated that he did and confirmed that he still wished to enter a guilty plea.  Consequently, the district court accepted Defendant's guilty plea.

The district court sentenced Defendant to 151 months' imprisonment and this appeal followed.[1]

## II.    DISCUSSION

Defendant now argues, for the first time, that the district court plainly erred by concluding that his guilty plea to bank robbery was knowing and voluntary without making sure that Defendant understood the nature of the charge against him.  Specifically, he asserts that the district court accepted his guilty plea, even though he denied the only conduct set out in the factual basis proffered by the Government that established the element of intimidation.

Where a defendant fails to challenge the voluntariness of his guilty plea before the district court, instead only raising this objection for the first time on appeal, we review such a challenge under a plain error standard.  *United States v. Moriarty*, 429 F.3d 1012, 1018–19 (11th Cir. 2005).  To establish plain error, a defendant must show:  (1) an error, (2) that is plain, and (3) that affects the defendant's substantial rights.  *Id.*  Even when a defendant establishes all three

---

[1]  Because Defendant was on supervised release for another bank robbery at the time of the bank robbery to which he pled guilty in this case, he was also sentenced for this violation of supervised release in a revocation proceeding.

conditions, we will nonetheless reverse based on the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation marks omitted) (alteration accepted). A defendant who seeks to reverse a conviction based on a guilty plea must show a reasonable probability that he would not have pled guilty had the error not been committed. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

When accepting a defendant's guilty plea, the district court must address "three core concerns" under Federal Rule of Criminal Procedure 11: "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000) (quotation marks omitted). At issue in the present case is the second core concern: that the defendant understood the nature of the charges.

"We review on a case-by-case basis whether the district court adequately ensured that a defendant understood the nature of the charge." *United States v. James*, 210 F.3d 1342, 1344 (11th Cir. 2000). "There is no rigid formula or 'mechanical rule' for determining whether the district court adequately informed the defendant of the nature of the charges." *United States v. Presendieu*, 880 F.3d 1228, 1230 (11th Cir. 2018). Indeed, the level of inquiry "varies from case to case

depending on the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence." *United States v. Camacho*, 233 F.3d 1308, 1314 (11th Cir. 2000) (quotation marks omitted). For cases involving simple charges, "a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice." *Id.* (quotation marks omitted).

Defendant was charged with bank robbery under 18 U.S.C. § 2113(a), which makes it a crime when a person "by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association." 18 U.S.C. § 2113(a). We have explained that intimidation "occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts." *United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005) (quotation marks omitted).

Here, Defendant has not established that the district court plainly erred by concluding that Defendant understood the nature of the charge. At the plea colloquy, the district court confirmed that Defendant received a copy of the indictment. Defendant stated that he understood the charge and that he had discussed the indictment with his attorney. Defendant also stated that he

6

understood that in order to be found guilty, the Government would have to show that he "took or attempted to take money or property that's possessed in this case by a federally insured bank and that [he] did so by means of force and violence or by means of intimidation." The above colloquy, on its face, supports a conclusion that the district court adequately ensured that Defendant understood the nature of the charge. That inference is further bolstered by Defendant's level of education, which included two years of college, and the fact that he had two prior convictions for federal bank robbery.

Defendant, however, argues that given his denial that he had reached into his jacket at one point during the robbery, contrary to the statement of the bank teller that he had done so, the district court should have necessarily been aware that he did not understood the nature of the charge. In support of this new argument made for the first time on appeal, Defendant contends that without the above factual allegation, the Government could not establish that he had taken money by "intimidation."

As noted, we must examine Defendant's argument through the prism of plain error. That is, would it have been plain to the district court that Defendant did not understand the requirement that he took money by intimidation based on his denial that he had reached into his jacket? Boring down on that question, then the preliminary question before us is whether, on the facts admitted by Defendant,

7

it would have been plain to the district court that intimidation had not been shown. We conclude that such an inference would not have been plain to the court.

We have explained that intimidation "occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts." *Kelley*, 412 F.3d at 1244. Defendant admitted that he whispered to the teller to give him the money, that he repeated the demand when the teller did not immediately comply, and that he directed the teller, "Don't do that," when she attempted to hit the alarm button. Viewed objectively, an ordinary person in the teller's shoes reasonably could infer a threat of bodily harm from Defendant's actions. *See id.*; *see also United States v. Gilmore*, 282 F.3d 398, 402 (6th Cir. 2002) ("Demands for money [from a teller] amount to intimidation because they carry with them an implicit threat:  if the money is not produced, harm to the teller or other bank employee may result."). Thus, even under a *de novo* standard, the facts admitted by Defendant would seem to constitute intimidation.

But certainly under a plain error standard, Defendant's argument fails. Defendant points to no on-point precedent establishing that intimidation by a putative bank robber would not be shown based on the facts that Defendant acknowledges. "It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no

plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). Accordingly, Defendant has failed to establish that the district court plainly erred in its implicit assumption that intimidation had been shown by the facts admitted by Defendant,[2] meaning that the court likewise did not plainly err by failing to discern that Defendant might not understand the elements of the offense.

　　Accordingly, the judgment of the district court is **AFFIRMED.**

---

[2] Not only would it not have been plain to the district court that intimidation might be lacking on these facts, but also it was obviously not plain to Defendant or his counsel. Specifically, in his sentencing memo, filed three months after entry of his guilty plea, Defendant never alluded to any concern about whether the element of intimidation had been established. Instead, he argued that his poor and abusive upbringing constituted mitigation. Similarly, at no time during his sentencing hearing did Defendant or his counsel articulate any concern about whether Defendant had intimidated the teller, or request that his plea of guilty be withdrawn. Defendant's purported qualms about the intimidation element arose only after sentence was imposed.